**UNITED STATES of America, Appellee,**

v.

**Matthew IANNIELLO, et al.,
Defendants–Appellants.**

Nos. 676, 677, 678, 679, 680, 681, 682, 683 and 758, Dockets 88–1464, 88–1470, 88–1471, 88–1472, 88–1473, 88–1474, 88–1477, 88–1508 and 88–1547.

United States Court of Appeals,
Second Circuit.

Argued Dec. 21, 1988.

Decided Jan. 18, 1989.

---

Judd Burstein, New York City (John Jacobs, Anthony Cardinale, Jay Goldberg, Frederick Hafetz, Albert A. Gaudelli, of counsel), for defendants-appellants Matthew Ianniello, Edward J. Halloran, Aniello Migliore and Anthony Salerno.

Michael E. Tigar, Austin, Tex. (Gustave H. Newman, Michael Abbell, Robert L. Ellis, Herbert J. Miller, Jr., Nathan Lewin, Stephen L. Braga, Anne M. Coughlin, Henry Putzel, III, Patrick M. Wall, of counsel), for defendants-appellants Nicholas Auletta, Louis DiNapoli, Vincent DiNapoli, Richard Costa and Alvin O. Chattin.

Mark R. Hellerer, New York City (Asst. U.S. Atty. for S.D. New York, Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., Alan M. Cohen, Kerri Martin Bartlett, Asst. U.S. Attys., of counsel), for appellee.

Before FEINBERG, NEWMAN and ALTIMARI, Circuit Judges.

FEINBERG, Circuit Judge:

Matthew Ianniello, Vincent DiNapoli, Louis DiNapoli, Nicholas Auletta, Edward J. Halloran, Aniello Migliore, Anthony Salerno, Richard Costa and Alvin O. Chattin appeal after judgments of conviction in the United States District Court for the Southern District of New York, Mary Johnson Lowe, J. The subject of the appeal is the judge's denial of appellants' motion for a new trial and her refusal to recuse herself from deciding the motion, 698 F.Supp. 1109. We vacate the order denying a new trial and remand to another district judge for further proceedings, including an evidentiary hearing.

Background

Appellants were convicted of violations of the RICO statute, 18 U.S.C. § 1961 et seq., and various underlying offenses following a thirteen-month trial in the district court. The jury was "semi-anonymous," that is, the trial court directed the jurors not to reveal their first names, addresses, or places of employment during voir dire. The jurors were also required to eat lunch together and were driven away from the courthouse at the end of each day. The jury convicted nine and acquitted two of the eleven defendants, failing to agree only on four predicate racketeering acts. After the verdicts were returned, defendants moved for a new trial and for recusal of the district judge in deciding the motion, claiming that they had been denied a fair trial because of ex parte communications between the judge and jury and an improper statement by a federal marshal to the jury. The district judge denied the motion without a hearing, holding that "the evidence submitted by the defendants in support of their motion lack[ed] sufficient reliability, clarity, and strength to warrant further inquiry." After imposition of sentences ranging from six years to 70, these appeals followed. Pursuant to an order of this court, the appeals have proceeded on a bifurcated basis with the questions dealt with in this opinion submitted to this panel on an expedited basis.

The alleged facts here are most unusual. In the district court, appellants offered three affidavits, allegedly signed by jurors and procured by a private investigator hired by defendants, swearing that three improper events took place during jury deliberations, two involving the judge and one involving a federal marshal. The affidavit of the jury foreperson states that the district judge, after about a week of deliberations, "appeared at their room and from the doorway told them they must work together and come to some decision. Either a conviction or acquital (sic), but she did not want a hung jury. All the jurors heard the Judge's remarks." According to appellants' calculations, the jury produced a verdict as to each defendant after deliberating for only seven and one half hours more

after this incident. The foreperson's affidavit also claims that on another occasion, while she was in the judge's "room" making a telephone call, "[t]he Judge admonished that [she] must pull the others together and reach a verdict [on the forfeiture decisions], again stating that she did not want a hung jury." The exact timing of this incident is unknown.

The affidavit of another juror stated, "[t]he Judge did not want a split decision, it had to be yes or no.... [The juror] remembers the Judge once coming to the door and reminding them to either convict or acquit, but she did not want a hung jury." On another occasion, while in the judge's room making a telephone call, "[t]he Judge told [the foreperson] to go back and try to convince the others to agree." The affidavit of the third juror indicated that it was also his understanding that "we could not have a 'hung jury' we had to either find the defendants guilty or not guilty."

One of the affidavits also stated that "[d]uring the deliberation the jury Foreperson was advised by the Marshall (sic) that we had to listen to over one hundred tapes if we didn't come to some decision." Although the foreperson's affidavit does not corroborate that the marshal made such a statement, it does say that "[s]he was told the people outside are becoming tired of this, if you don't come to a decision soon you are going to have to listen to over one hundred tapes and you'll really be stuck, so pass that on to the others." After this last incident, according to appellants' calculations, the jury deliberated only three and one half hours more before returning a verdict.

## Discussion

Appellants claim that these events deprived them of a fair trial and coerced the jury into a verdict. They argue that the judge's comments would have been improper even if they had been delivered in open court because the jury never gave any indication to the court that it was deadlocked and the instructions lacked a necessary element of a valid *Allen* charge—a reminder that the jurors should not abandon their conscientiously held doubts.[1] Appellants claim that the judge told the jury that there could be no hung jury and that this was fundamental error, citing, e.g., *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), and *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam). The jury followed this erroneous instruction, appellants contend, as evidenced by its reaching a verdict on each and every count of the indictment as to each defendant, totalling over 160 findings of guilt or innocence. Appellants claim that the ex parte nature of the instructions aggravated the error, denying defendants' Sixth Amendment right to confrontation, and violating Fed.R.Crim.P. 43, under which a defendant has the right to be present when the court communicates with the jury.

The government responds by raising doubts as to whether the judge's and jurors' alleged statements were made at all, or, in the case of the jurors, made freely. It also argues that even if the statements were made, they were harmless. It claims that in context, and under all the circumstances, the jury was not coerced into a verdict as shown by the fact that it continued deliberating and failed to reach agreement on some of the predicate acts. The government does not agree with appellants' estimates of how much time the jury deliberated. The government also argues that the law creates a presumption against the hearing requested here, and that this court should be reluctant to allow reexamination of a jury verdict, because such inquiries lead to jury tampering and harassment. Like the district judge in her opinion, the government contends that the proffered affidavits reveal facial inconsistencies and indicate unreliability, arguing that the proof appellants have offered is insufficient to require a new trial or even a hearing.

---

**1.** The reference is to *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

■ It would be entirely inappropriate for this court to order a new trial at this time, when it is not clear what occurred, *United States v. Gersh*, 328 F.2d 460, 464 (2d Cir.), cert. denied sub nom., *Mugnola v. United States*, 377 U.S. 992, 84 S.Ct. 1919, 12 L.Ed.2d 1045 (1964), or whether defendants suffered prejudice. At oral argument, appellants seemed to retreat from their request for a new trial, pressing instead their demand for an evidentiary hearing. The gravity of granting such a request should not be underestimated, however, because even a post-verdict evidentiary hearing raises serious questions. "The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." *United States v. Barshov*, 733 F.2d 842, 851 (11th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985), citing *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). As the judge pointed out in her opinion below, hearings such as the one that appellants request should be "avoided whenever possible."

We are always reluctant to "haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir.1983), cert. denied, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). As we have said before, post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts. *Miller v. United States*, 403 F.2d 77, 82 (2d Cir.1968); *United States v. Crosby*, 294 F.2d 928, 950 (2d Cir.1961), cert. denied sub nom., *Mittelman v. United States*, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed. 2d 523 (1962). This court has consistently refused to allow a defendant to investigate "jurors merely to conduct a fishing expedition." *United States v. Moten*, 582 F.2d 654, 667 (2d Cir.1978) (citing cases).

Nevertheless, a post-trial jury hearing must be held when a party comes forward with "clear, strong, substantial and incontrovertible evidence ... that a specific, nonspeculative impropriety has occurred[.]" *Moon*, 718 F.2d at 1234, citing *King v. United States*, 576 F.2d 432, 438 (2d Cir.), cert. denied, 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978). Such hearings have been held by a district court or ordered by an appellate court where the jury foreperson informed the judge during the trial that an unnamed individual had told him that "he could profit by bringing in a verdict favorable to the petitioner[,]" *Remmer v. United States*, 347 U.S. 227, 228, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); where a person dropped from a jury because he had approached the defendant may have communicated with other jurors, *Moten*, 582 F.2d at 666–67; and where jurors consulted extra-record information in reaching their verdict, *United States v. Calbas*, 821 F.2d 887, 894 (2d Cir.1987), cert. denied, —— U.S. ——, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988); *United States ex rel. Owen v. McMann*, 435 F.2d 813, 815 (2d Cir.1970), cert. denied, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971).

■ We do not know what happened in the jury room, and the facts must be carefully ascertained before a decision is made on whether a new trial is required in this case. Nevertheless, affidavits of three jurors alleging specific acts of inappropriate conduct by the district judge and a federal marshal responsible for the jury satisfy the standard set out above. The jurors' statements contain concrete allegations of inappropriate conduct that constitute competent and relevant evidence. The requirements of "strong, substantial and incontrovertible evidence" do not demand that the allegations be irrebuttable; if the allegations were conclusive, there would be no need for a hearing. In a case such as this, "[t]he trial court should not decide and take final action *ex parte* ..., but should determine the circumstances ... in a hearing with all interested parties permitted to participate." *Remmer*, 347 U.S. at 229–30, 74 S.Ct. at 451–52. Although the district judge expressed the view in her opinion

that there seem to be certain indicia of unreliability on the face of the affidavits, the basic allegations in the affidavits are indeed serious and warrant further inquiry. In this highly unusual case, involving possible ex parte conversations between the judge and jury during a critical phase of the trial, appellants are entitled to a hearing to determine whether the allegations are true and to provide a basis for assessing whether appellants were prejudiced by inappropriate communications with the jury.

Defendants and the government agree that if we determine that a remand for a hearing is required, a judge other than Judge Lowe should conduct it. In keeping with the policy against holding this kind of hearing, its scope should be limited to only what is absolutely necessary to determine the facts with precision. See *Moten*, 582 F.2d at 667. We leave it to the district court's discretion to decide the extent to which the parties may participate in questioning the witnesses, and whether to hold the hearing in camera. See *United States v. Calbas*, 821 F.2d at 894–97. On remand, the investigator who submitted the cursory affidavit stating that he took the statements of the three jurors should be a witness so that the district judge can determine whether the products of his investigation deserve credence. The three jurors who have already come forward with affidavits, as well as the marshal, should also be called to testify. The rest of the jurors, however, should be examined only if the district court conducting the hearing determines, in its discretion, that such testimony is needed. The same principle applies to the possible questioning of Judge Lowe; asking a district judge to testify is a serious matter, and here too the district court has broad discretion on how to proceed. Perhaps Judge Lowe's account of the facts may be adequately set forth in an affidavit.

The substance of the inquiry on remand should be limited to determining whether the judge or marshal made ex parte statements to the jury, what each said, the factual circumstances surrounding any ex parte contacts, and whether the jurors who heard the statements communicated the content of those statements to the other jurors. See *Owen*, 435 F.2d at 820. In keeping with Fed.R.Evid. 606, the district judge conducting the hearing should not allow inquiries into the mental impressions of the jurors. Whether the jury relied on improper evidence or instructions is not a question to be asked jurors, but "is determined ... on the basis of the nature of the matter and its probable effect on a hypothetical average jury." *Crosby*, 294 F.2d at 950. Based on this objective standard, and the totality of the circumstances, *Jenkins*, 380 U.S. at 446, 85 S.Ct. at 1060, the district court should determine whether appellants are entitled to a new trial. If the "hypothetical average jury" would have been coerced or led astray by improper ex parte statements of the judge or marshal, then a new trial will be necessary. We do not intend to suggest how the district court should rule on the new trial motion. We leave open the possibility that once the precise information regarding the alleged ex parte communications is obtained, the district court might conclude that any error was harmless. See *Rushen v. Spain*, 464 U.S. 114, 118–19, 104 S.Ct. 453, 455–56, 78 L.Ed.2d 267 (1983) (per curiam) (ex parte communication between judge and juror can be harmless). But cf. *United States v. Ronder*, 639 F.2d 931 (2d Cir.1981) and *United States v. Schor*, 418 F.2d 26 (2d Cir.1969). It will be up to the district court in the first instance to determine what occurred and to decide whether a new trial is necessary.

The district court may also inquire into whether the law or any court orders were violated by persons involved with interviewing the jurors. It is well-settled that the district court may bring post-verdict juror interrogation under its control, *Miller*, 403 F.2d at 81–82, and particularly in cases with semi-anonymous juries, such control would appear to be wise. The parties disagree as to whether the district judge ordered that the jurors not be contacted by any of the parties in this case. Moreover, appellants' counsel declare that they were not personally involved in the

post-verdict investigation, thus disclaiming participation in "a planned, systematic, broad-scale posttrial inquisition of the jurors," which this court has condemned as "reprehensible." *United States v. Brasco,* 516 F.2d 816, 819 n. 4 (2d Cir.) (per curiam), cert. denied, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975). We leave it to the district judge holding the hearing to decide in the first instance whether violations of law or court orders in interrogating the jurors should have any effect upon appellants' right to a new trial. A decision on that issue, of course, would not limit the exposure of appellants, their attorneys or their hired investigator to prosecution for any wrongful conduct. This disposition of the issue severed for initial appellate consideration is without prejudice to the rights of the appellants to pursue other issues in the appeal after the completion of proceedings on remand.

The order denying a new trial is vacated and the case is remanded for further proceedings consistent with this opinion.