**UNITED STATES of America,**

v.

**Angelo PACCIONE, Anthony Vulpis, John McDonald, A & A Land Development, W & W Properties, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., New York Environmental Contractors, Inc., Rosedale Carting, Inc., and Vulpis Brothers, Ltd., Defendants.**

**No. SSS 89 Cr. 446 (CBM).**

United States District Court,
S.D. New York.

Aug. 13, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Elliot Peters, Jeffrey B. Sklaroff and Kevin Ford, Asst. U.S. Attys., New York City, for the U.S.

Newman & Schwartz by Gustave Newman and Deborah Schwartz, New York City, for defendants Paccione, A & A Land Development, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., and New York Environmental Contractors, Inc.

Benjamin Brafman, P.C., by Benjamin Brafman, New York City, for defendant Vulpis.

Robert Kasanof by Robert Kasanof and Edward Chikofsky, New York City, for defendant McDonald.

Larossa, Mitchell & Ross by Michael Ross, New York City, for defendants Rosedale Carting, Inc. and Vulpis Bros., Ltd.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On June 8, 1990, defendants Paccione, Vulpis, A & A Land Development, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., Rosedale Carting, Inc., and Vulpis Brothers, Ltd. were found guilty of racketeering, racketeering conspiracy, and several counts of mail fraud. Defendants McDonald and New York Environmental Contractors, Inc. were found guilty of one count of mail fraud.

Defendants have moved to set aside these verdicts and for a new trial pursuant to Fed.R.Crim.P. 33 or, in the alternative, to have an evidentiary hearing at which jurors would be questioned by counsel in the presence of the court, pursuant to Fed. R.Evid. 606(b). For the reasons discussed below, that motion is denied.

*Background*

On June 21, 1990, the court received a letter from Juror # 3 in the above-captioned case. In the letter, the juror expressed, among other things, "disappointment" that the jury had not been notified, following the verdict, that one of the defendants, Fred Weiss, had been shot. At the beginning of the trial, the court, with the

agreement of the defense counsel, instructed the jury that Weiss had died but did not inform them of the manner of his death. (Tr. 16) In her letter, Juror #3 stated that "throughout the trial there was great speculation about how Mr. Weiss had died. We were curious about his death and knew there was the possibility that he had been murdered." She also stated that she "knew this case was different when we were told we would be anonymous and that we would receive limousine service to and from the court." The letter indicated that since learning that Weiss had been shot, she has become concerned for her personal safety.

In addition, in her letter, Juror #3 stated that it "is disheartening to know that one of the car drivers knows a Tony and Dominick in the carting business on Staten Island and also knows that I was picked up only a short distance from my home." On June 7, 1990, during deliberations, Juror #3 and Juror #11 were questioned by the court about a conversation between Juror #11 and one of the car service drivers which she had related to Juror #3. (Tr. 7543–7561) According to Juror #11, the driver had commented on a traffic accident involving a garbage truck by saying that " 'that's what happens, Tony and Dominick hire people like that' " and then explaining that he was referring to " 'those garbage companies in Staten Island.' " (Tr. 7543). The owners of defendants Rosedale Carting, Inc. and Vulpis Brothers, Ltd. are defendant Anthony Vulpis and his brother Dominick.

Defendants now argue that these events, together with the fact that the jury was anonymous, suggest that at least some jurors may have been prejudiced by fear of the defendants. They therefore ask for a new trial or that the court conduct a hearing in which jurors are asked about any extraneous information and in which the relevant limousine driver is examined. For the following reasons, these requests are denied.

*Analysis*

The Second Circuit has made it clear that courts are, and should be, hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.... [A] trial court is required to hold a post-trial jury hearing only when reasonable grounds for investigation exist. Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence ... that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant. A hearing is not held to afford a convicted defendant the opportunity to 'conduct a fishing expedition.' ... Although the circumstances in the decided cases are instructive, each situation in this area is *sui generis.*

*United States v. Moon,* 718 F.2d 1210, 1234 (2d Cir.1983) (citations omitted); *see also, United States v. Ianniello,* 866 F.2d 540, 543 (2d Cir.1989) (citations omitted) (duty to conduct post-verdict examination of jurors arises only when party alleging misconduct makes adequate showing of extrinsic influence to overcome presumption of jury impartiality). The defendants in the instant case have not met this standard.

As the Government observes, Juror #3's letter to the court clearly indicates that she learned of the manner of Weiss' death only after the verdict in the instant case was delivered. Nothing in the letter even suggests that Juror #3, or any other juror, received any extraneous information concerning Weiss' death during the trial. As noted above, defendants agreed to an instruction at the beginning of trial informing the jury of Weiss' death. Speculation by jurors in response to that instruction does not constitute an adequate showing of extrinsic influence. It certainly does not provide clear evidence of a "specific, nonspeculative impropriety" which could have prejudiced the jury. There is, therefore, no need either for a hearing or for a new trial.

As for the conversation between the car service driver and Juror #11, the court has already conducted an examination of Jurors #11 and #3. When asked by the court, both jurors responded that this conversation would not influence their judg-

ment in the case at hand and agreed not to discuss these events with anyone else. (Tr. 7544, 7550) The court reported its discussions with the jurors to all counsel and made inquiries suggested by defense counsel. The court then denied a defense motion for a mistrial, observing that both jurors were apparently responsible, highly educated and intelligent and concluded that the events in question would not influence their judgment. (Tr. 7555–56) There is no reason to revisit this issue now.

As for the issue of the anonymous jury, the court heard argument on that question before the trial. Defense counsel reiterated their position following the examination of the two jurors discussed above. As with Juror # 3's conversation with the car service driver, there is no reason to revisit that issue now.

In addition, it should be noted that the care and attention to detail exhibited by the jury both in the deliberation process and in the verdict itself contradicts any suggestion that the jury's judgment was affected by fear of the defendants. The record makes it clear that the jury assessed each charge in the indictment separately, distinguishing among defendants and among mailings alleged as part of various racketeering acts. Such care and attention to detail are inconsistent with the claim of fear and prejudice advanced by the defendants.

For the foregoing reasons, defendants' motion for a new trial pursuant to Fed.R. Crim.P. 33, or in the alternative, for a hearing under Fed.R.Evid. 606(b) is denied.