**UNITED STATES of America**

v.

**Justin A. VOLPE, Thomas Bruder, Charles Schwarz, Thomas Wiese, Michael Bellomo, Defendants.**

**No. CR 98–196(S–3).**

United States District Court, E.D. New York.

July 28, 1999.

Zachary W. Carter, United States Attorney Eastern District of New York, (Loretta E. Lynch, Alan Vinegrad, and Kenneth P. Thompson, Assistant United States Attorneys, of counsel), Brooklyn, New York, for Plaintiff.

Marvyn M. Kornberg, Kew Gardens, New York, for Justin A. Volpe, defendant.

Stephen C. Worth, Worth, Longworth, Bamundo & London LLP, New York City, for Charles Schwarz, defendant.

Stuart London, Worth, Longworth, Bamundo & London LLP, New York City, for Thomas Bruder, defendant.

Russell M. Gioiella, Litman, Asche, Lupkin & Gioiella, New York City, for Thomas Wiese, defendant.

Joseph Tacopina, Kudman, Trachten, Kessler & Tacopina, LLP, New York City, for Thomas Wiese, defendant.

John D. Patten, New York City, for Michael Bellomo, defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

On June 8, 1999 a jury found defendant Charles Schwarz guilty of conspiring to violate, and violating, the civil rights of Abner Louima. Schwarz has moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, and for release on bail pending sentencing and appeal of his conviction pursuant to 18 U.S.C. § 3143(a) and (b).

I

Schwarz seeks a new trial based on various claims. The most prominent is that Assistant United States Attorney Alan Vinegrad violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to the attorney for Schwarz the substance of an attempt by Marvyn Kornberg, Esq., the attorney for defendant Justin Volpe, to negotiate with Mr. Vinegrad a plea bargain.

As described in Mr. Vinegrad's affidavit, on May 20, 1999 Mr. Kornberg approached and said that Volpe was prepared to admit his own guilt but wished the opportunity to testify that a police officer other than Schwarz was present in the bathroom during Volpe's sexual assault on Abner Louima, and that no one other than Volpe assaulted Louima in the patrol car.

The government rejected Mr. Kornberg's offer the very same day.

On May 24, 1999, the day before Volpe pleaded guilty, Mr. Kornberg informed Schwarz's attorney that Volpe could "take your guy [Schwarz] out of the bathroom."

On May 25, 1999, after Volpe pleaded guilty, Schwarz's attorney, when asked by a reporter whether he intended to call Volpe in his client's defense, replied: "You mean the man who admitted pleading guilty to torturing another individual? Uh, no, I don't need Mr. Volpe's testimony."

The admitted facts show no violation of *Brady.*

■ The government is not required to disclose to the defense a witness' exculpatory statement when the defendant is on notice of the essential facts enabling him to interview the witness, call him to the stand, and take advantage of the exculpatory information. As the Second Circuit stated in *United States v. Ruggerio,* the purpose of *Brady* is to

> assure that [the defendant] will not be denied access to exculpatory evidence known to the government but unknown to him. Here the [defendant] was on notice of the essential facts required to enable him to take advantage of such exculpatory testimony as [the witnesses] might furnish. He was also well aware of the process by which they could be compelled to testify at trial.... If [the defendant] wanted their testimony, the obvious and logical course was to subpoena them and put them on the witness stand.

472 F.2d 599, 604 (2d Cir.1973).

■ The memorandum in support of Schwarz's motion for a new trial says that "the fact that Volpe was prepared to waive his Fifth Amendment right and exonerate Schwarz was unknown to the defense and was not disclosed by the prosecution until June 17, 1999." He claims the government's nondisclosure somehow inhibited his attorney from seeking to interview Volpe or from calling Volpe to the stand. The attorney, who knew from Mr. Kornberg before Volpe pleaded what he would allegedly say, argues that *Brady* entitled the defense to disregard exculpatory information unless it comes from "credible sources."

Nothing in *Brady* or the cases that followed it justifies such an assumption. When the defendant either knows, or should have known, of the essential facts that would allow him to take advantage of information favorable to him, there is no *Brady* violation. There has then been no "suppression" of material. *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982). That Schwarz's attorney declined even to try to take such advantage is some measure of the assessment by an experienced lawyer of the value of Volpe's testimony. In any event the failure to call Volpe as a witness was not the result of any *Brady* violation by the government. It was a tactical decision of the defense.

## II

■ Schwarz also seeks a new trial, claiming that the jury verdict was tainted. His attorney submits post-verdict typewritten affidavits executed by three of the "anonymous" jurors, all three in almost identical language.

Each affidavit says that the juror "contacted" Schwarz's attorney and "discussed certain aspects of the jury's deliberations with him," and that during the jury deliberations, despite the jurors' "best efforts to avoid publicity," one juror mentioned that Volpe had pleaded guilty to assaulting Louima in the bathroom and making the assault with another person present.

Each of the three jurors then went on to recite that after their jury service they learned "through press accounts" that Mr. Kornberg had said to the prosecutors that the second officer in the bathroom was not Schwarz. The jurors concluded that had they known what Mr. Kornberg had said they would have had a reasonable doubt as to the guilt of Schwarz.

The three "anonymous" jurors thus made two separate statements, one, that an unidentified juror mentioned that Volpe had said in his plea allocution that he assaulted Louima "with" another officer, and two, that had they known of Mr. Kornberg's later extrajudicial statement to the press they would have had a reasonable doubt as to Schwarz's guilt.

As to the first statement that more than one officer was present in the bathroom, the affidavits suggest nothing to indicate that this was used by any juror in coming to a verdict or that it had the slightest impact on any juror.

The fact that there was a second police officer in the bathroom with Volpe could hardly have been news to the jury. If anything was clear in the testimony of the government witnesses it was the fact that such a second officer was present. From the very first statement by Louima to the police concerning the incident he so stated, and he reiterated that statement often thereafter. Moreover, there was a plethora of other evidence to confirm the fact that Volpe was not alone with Louima in the bathroom.

There was no suggestion in any of the testimony or in any of the questions posed to the witnesses that Louima and Volpe were the only persons in the bathroom. That suggestion came in an apparent last minute thought of Schwarz's attorney after the evidence had been concluded. In his summation he argued that maybe Louima might have considered it would be less humiliating to be sexually violated by two men than by one and therefore made up a fake story about the presence of two officers rather than one in order to preserve a "shred" of his manhood.

Such a fanciful suggestion, based on no evidence whatsoever, might appeal to the imagination of some novelist, but it has no pertinence in this case.

The memorandum of law submitted to the court on behalf of Schwarz argues that a new trial is "mandated" on the basis of the second part of the jurors' affidavits. That part in effect recites that if the press reports truly reported Mr. Kornberg's alleged statement that Volpe would, if called, say the second officer in the bathroom was not Schwarz, then it would create a reasonable doubt as to Schwarz's guilt.

As noted above, Schwarz was free to call Volpe as a witness. He did not do so. The later reports in the press were not permissible evidence and could not possibly be a basis for a new trial. The same may be said of Mr. Kornberg's *ex parte* statement to the press. It would be a strange rule of law that would "mandate" a new trial based on hearsay statements of a

lawyer published by the press of alleged evidence that could have been offered, but was deliberately not offered, by the defendant.

Schwarz's argument, to put it charitably, lacks merit.

■■■ Finally, the court "has the power, and sometimes the duty," to order that post-verdict questioning of the jury be under its supervision. *United States v. Moten*, 582 F.2d 654, 665 (2d Cir.1978). At a minimum, notice to the court and opposing counsel is required before any such inquiries may be made. *Id.* at 665–66. Such court supervision is particularly required where the jury is anonymous. *See United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir.1989).

■ It makes no difference that the three jurors contacted the defendant's attorney. As the Second Circuit has observed:

Human nature is such that some jurors, instead of feeling harassed by post-trial interviewing, might rather enjoy it, particularly when it involves the disclosure of secrets or provides an opportunity to express misgivings and lingering doubts. A serious danger exists that, in the absence of supervision by the court, some jurors, especially those who were unenthusiastic about the verdict or have grievances against fellow jurors, would be led into imagining sinister happenings which simply did not occur or into saying things which, although inadmissible, would be included in motion papers and would serve only to decrease public confidence in verdicts.

*Moten*, 582 F.2d at 665.

■ The communication and discussion with the three jurors by Schwarz's attorney about their deliberations without prior notice to the court and opposing counsel was improper. As a result, on July 14, 1999 the court issued an order prohibiting any further contact with jurors by any

defendant without first obtaining authorization of the court.

■ The sanctity of jury deliberations is a "basic tenet of our system of criminal justice." *United States v. Abcasis*, 811 F.Supp. 828, 832 (E.D.N.Y.1992). Courts thus admit post-verdict evidence of a jury's deliberations only with "great caution." *Mattox v. United States*, 146 U.S., 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892).

The Second Circuit has warned of the following "evil consequences," of post-verdict inquiries: "subjecting juries to harassment, inhibiting jury room deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *Ianniello*, 866 F.2d at 543.

■ To protect the sanctity and finality of jury verdicts the movant must show just cause why a post-verdict inquiry is necessary.

■ The duty to investigate a post-trial motion of jury contamination arises only when the defendant overcomes the presumption of jury impartiality. *Ianniello*, 866 F.2d at 543. The defendant must show "reasonable grounds" why a jury verdict should be disturbed. *Moten*, 582 F.2d at 664. "Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence ... that a specific, non-speculative impropriety has occurred which could have prejudiced the trial of a defendant." *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir.1983).

■ For reasons already stated, the juror affidavits submitted by Schwarz do not present clear evidence of specific improprieties. Nor has Schwarz presented sufficient evidence to warrant a hearing to determine possible prejudicial impact of extrinsic information. *See Ianniello*, 866 F.2d at 543 (such a hearing is to be "avoided whenever possible").

Jurors are presumed to follow the cautionary instructions of the court. *Shan-*

*non v. United States*, 512 U.S. 573, 585, 114 S.Ct. 2419, 2427, 129 L.Ed.2d 459 (1994). Throughout voir dire and the course of the trial the court repeatedly warned the jury to ignore outside information and consider only the evidence before them. In addition, the court specifically instructed the jurors at least three times that Volpe's plea could not be used as evidence against any of the other defendants. And two of the jurors who submitted affidavits had expressly agreed individually during voir dire that they could decide the case "solely on the evidence."

Schwarz' motion for a new trial based on jury exposure to extraneous information will be denied.

### III

■ Schwarz seeks to set aside the verdict on the ground that it was against the weight of the evidence. Rule 33 of the Federal Rules of Criminal Procedure states the court may grant a new trial "if the interests of justice so require." Such relief is to be granted "sparingly" and only in "exceptional circumstances." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir.1992). The court must generally "defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *Id.* The jury's determination of guilt must stand if there was "competent, satisfactory and sufficient evidence" in the record to support the jury's finding of guilt. *Id.* Only if "manifest injustice" would result from upholding a jury's verdict may the court order a new trial. *Id.*

■ The record contains more than ample evidence to support the jury's finding of guilt. Schwarz' argument that the conviction was against the weight of the evidence is unpersuasive. The motion will be denied.

### IV

Schwarz also claims the government violated *Brady* by failing to make timely disclosure of handwritten notes prepared by

Sergeant William Hargrove of an interview with Louima at Coney Island Hospital. At an early date the government admittedly furnished defense counsel with the typewritten report of the interview but did not provide the handwritten notes to counsel until May 24, 1999, before Sergeant Hargrove took the witness stand, but after Louima and two other officers had testified.

Sergeant Hargrove's notes indicate that Louima allegedly said he was put into a cell for ten minutes before he was taken to the bathroom and beaten. The typed report does not mention Louima being taken to a cell for ten minutes.

Schwarz says that the delay in providing the notes prevented his attorney from raising during cross-examination of Louima and the two other officers, Turetzky and Schofield, the issue of the ten-minute "gap." Each of these witnesses testified to the effect that Schwarz took Louima directly to or towards the bathroom from the front desk.

Schwarz also says that the delay in furnishing the notes impeded his attorney's ability to prepare a defense by depriving him of the right (1) to prepare an alibi for the time period that Officers Turetzky and Schofield claimed that he was with Louima on the way to the bathroom, and (2) effectively to move to call defendant Thomas Wiese's attorneys, Joseph Tacopina, Esq. and Russell Gioiella, Esq., as witnesses to testify to certain statements made by defendant Thomas Wiese that "Schwarz did not go with" Volpe and Louima to the bathroom, and that Wiese saw only Volpe and Louima there.

 The government's Brady obligation extends only to evidence favorable to the accused that is material. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97; *United States v. Payne,* 63 F.3d 1200, 1208 (2d Cir.1995). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Undisclosed evidence is material only if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

 In determining whether or not *Brady* has been violated, the court considers the materiality of suppressed evidence collectively, not item by item. *Kyles,* 514 U.S. at 436–37, 115 S.Ct. at 1567 ("the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense").

 The government did disclose Sergeant Hargrove's notes during trial. The question is whether such disclosure was early enough for the defense to take advantage of it. *See United States v. Brown,* 582 F.2d 197, 200 (2d Cir.1978).

Schwarz had the opportunity thoroughly to exploit the issue of the ten-minute "gap" during the course of the trial. He repeatedly elicited from Hargrove that Louima said during the interview that he was first taken to the cell and then to the bathroom. He brought out how the statement varied from other public statements Louima had made on the issue, and forcefully argued the point in his summation.

Louima repeatedly testified that he did not remember being interviewed by police department investigators at the hospital. It seems highly unlikely that any different response would have been elicited from him had he been confronted with the discrepancy at issue. In any event, Schwarz had the opportunity during the trial to request the court to recall Louima or the other witnesses who testified before the disclosure of the original notes. Schwarz chose not to do so.

Schwarz knew from the government's pre-trial demand for an alibi notice that the approximate time of the sexual assault of Louima was between 4:50 a.m. and 5:00 a.m. He was also on notice from information contained in the precinct log books furnished to the defense as part of pre-trial discovery that he might have had to explain his whereabouts from the time Louima was taken away from the front desk, at about 4:50 a.m., to the time Schwarz left the stationhouse to go to the hospital, at about 5:05 a.m. The timing of the disclosure of Sergeant Hargrove's notes did not impede Schwarz' ability to prepare an alibi defense for the relevant time period.

As the court ruled before trial, the statements made by Wiese's attorneys that were exculpatory of Schwarz were inadmissible hearsay. Schwarz's argument that Sergeant Hargrove's notes provide the "corroborating circumstances" that "clearly indicate the trustworthiness" of Wiese's statements, thus rendering them admissible, is without merit. In any event, Schwarz could have renewed his motion to admit this evidence during trial but chose not to do so.

The jury was fully aware of the defense arguments regarding the notes. It requested Hargrove's testimony be read back during deliberations. The testimony of Louima, Patrick Antoine, Connelle Lugg, and Officers Turetzky and Schofield all point to Louima being placed into a cell only after he was sexually assaulted in the bathroom. Given the weight of the evidence contradicting the ten-minute "gap," and the fact that the jury knew about the discrepancy, there is no reasonable probability that the outcome would have been different had the government disclosed the notes earlier. Certainly such earlier disclosure would not have undermined confidence in the verdict.

Schwarz fails to show prejudice from the timing of the disclosure sufficient to warrant either a dismissal of the indictment or a new trial.

## V

Schwarz seeks release on bail pending sentence and appeal under 18 U.S.C. § 3143(a), governing release pending sentence, and § 3143(b), governing release pending appeal.

Section 3143(b) applies when the defendant has already been sentenced and has filed an appeal. As Schwarz has not yet been sentenced, this court thus considers only his claims under section 3143(a).

Schwarz argues that he is entitled to be released on bail under the language of section 3143(a)(1), which provides in relevant part that, "[e]xcept as provided in paragraph (2)," bail may be granted "if the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) [governing release under certain conditions]."

But because Schwarz was convicted of a crime of violence and faces a maximum sentence of life imprisonment, he falls under the more exacting standard of section 3143(a)(2), which reads:

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A) [a crime of violence], (B) [an offense for which the maximum sentence is life imprisonment or death], or (C) [certain narcotics offenses] of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—

(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; *and*

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to

any other person or the community. (Emphasis supplied).

Since, for the reasons stated above, Schwarz's motion for a new trial is being denied, and the government has not agreed to recommend a sentence of no imprisonment for him, Schwarz is not entitled to release on bail under section 3143(a)(2)(A).

Part (A) of section 3143(a)(2) must be satisfied before the court could even consider whether Schwarz has met the requirements for release under section 3143(a)(2)(B). *See United States v. McAllister*, 974 F.2d 291, 293 (2d Cir.1992) (reversing order for release without addressing whether 3143(a)(2)(B) was satisfied because lower court could not make requisite finding under section 3143(a)(2)(A)).

Schwarz' motion for release pending sentence or appeal of his conviction will be denied.

### VI

Schwarz' motions for a new trial and for release on bail pending sentencing and appeal of his conviction are denied.

So ordered.