**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1610
_____

UNITED STATES OF AMERICA

v.

DELROY A. THOMAS,
Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 1:15-cr-00039-001)
District Judge:  Honorable Wilma A. Lewis
_____

Argued:  December 6, 2022
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, GREENAWAY, JR., and FISHER, <u>Circuit</u> <u>Judges</u>.

(Filed: January 6, 2023)
_____

Martial A. Webster, Sr. [ARGUED]
116 Queen Cross Street
Frederiksted, VI 00840

    <u>Counsel for Appellant</u>

Adam Sleeper [ARGUED]
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802

Rhonda Williams-Henry
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820

      Counsel for Appellee

_____

OPINION[*]
_____

CHAGARES, Chief Judge.

Delroy Thomas ("Thomas") was convicted by a jury of use of interstate commerce facility in commission of a murder for hire in violation of 18 U.S.C. § 1958(a) (count 1); attempted murder in the first degree in violation of 14 V.I.C. § 922(a)(1) (count 2); and attempted retaliation against a witness in violation of 14 V.I.C. § 1510(a)(1) (count 3). The District Court vacated count 2 at sentencing and sentenced Thomas consecutively to ten years of imprisonment on count 1 and five years of imprisonment on count 3. Thomas appeals several aspects of his conviction and sentence. Thomas's arguments all are meritless, and we will therefore affirm the judgment and sentence of the District Court.

I.

We write primarily for the parties and recite only the facts essential to our decision. Because this appeal comes to us following a jury's guilty verdict, we recite the

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

facts in the light most favorable to the Government.

A.

An information in the Superior Court of the Virgin Islands charged Thomas with aggravated rape. The minor victim, P.E., and her mother, Felicia Bennerson, were witnesses in that matter. Thomas later was detained in connection with the Superior Court case at the Golden Grove Adult Correctional Facility ("Golden Grove").

Thomas sent text messages while detained at Golden Grove from a contraband cell phone in his name identifying P.E. and Bennerson as the people that got him "into this mess." Gov't Supplemental Appendix ("Gov't App.") 3. Thomas texted that he was "working on some shyt [sic] . . . [a] fuckin massacre," Gov't App. 2, and that he would "put a hit on she and she mother" if he remained incarcerated, Gov't App. 4.

Thomas then approached another inmate, Jason Navarro ("Navarro"), and asked if Navarro knew a hitman that could kill the witnesses in his Superior Court case. Navarro, unbeknownst to Thomas, was a confidential informant for the Drug Enforcement Administration ("DEA") and promptly reported Thomas's request to his handling agent, Special Agent Tracey Gardner. Gardner opened an investigation and began recording phone conversations between Thomas and Navarro.

In the recorded calls, Thomas reiterated to Navarro that he wanted P.E. and her mother killed. Thomas stated, for example, that he wanted the two "off" and that he was not taking any chances, Gov't App. 8 (Tr. Ex. 1-4) 5:01–5:07; that he would get the gun; and that he wanted the two killed before he posted bail so that he would have an alibi. Thomas also acknowledged that if Navarro's partner did not carry out the hit, Thomas

3

would have someone else do it. Thomas, in fact, told Navarro that the hit was the result of "eight months of thinking," Gov't App. 9 (Tr. Ex. 1-5) 4:12–4:21, and that "[t]his thing going down for sure. No ifs, no ands, no buts 'bout it. Ain't no changing mind," Gov't App. 9 (Tr. Ex. 1-5) 2:53–2:58. Navarro told Thomas that if he were serious, he had to send Navarro photographs of the witnesses that he wanted killed. Thomas then sent photographs of P.E. and Bennerson to Navarro. Navarro and Thomas also discussed the price that Thomas was willing to pay for the hit as well as the logistics of a $500 down payment, which Navarro organized with the DEA.

Thomas made the down payment through a friend, Shelbie Beazer. Thomas provided Beazer with a phone number and told Beazer to call the person with the money and find out where to meet him. Beazer did so. Thomas then instructed Beazer to drop that money into the console of a designated vehicle. Beazer again did as Thomas requested. The DEA monitored the drop. Beazer was pulled over by authorities shortly after dropping the money into the designated vehicle, and she was on the phone with Thomas at the time.

Thomas moved under Federal Rule of Criminal Procedure ("Rule") 29 for a judgment of acquittal after the Government's case in chief and again at the end of the trial. The court denied the motion, reasoning that the text messages and recorded phone conversations provided sufficient evidence to send each count to the jury.

B.

Alexianna Charles, Navarro's fiancé, previously had been arrested by the Department of Homeland Security ("DHS") for immigration violations. Charles pleaded

4

guilty to those charges and was sentenced to two years of probation with a recommendation by the court that she be removed by DHS. DHS removed Charles in March 2016. The prosecution learned of Charles's removal in May 2016.

Thomas moved before trial to dismiss the case against him for spoliation of evidence. Thomas argued that Charles was involved in the money drop and that through Charles's removal, the Government removed a material witness and failed to preserve exculpatory information in the form of Charles's testimony. The Court denied the motion, finding that Thomas failed to establish that the evidence was exculpatory or destroyed in bad faith.

C.

The Government requested the call log of Golden Grove Corrections Officer Lucien Lake the week before trial after learning that Thomas planned to argue that Lake also participated in the money drop. The case agent received the call log on Friday, July 5, 2019, and emailed it to the U.S. Attorney in this case on Saturday, July 6, 2019. The U.S. Attorney emailed the call log to Thomas's counsel that same day. The call log showed calls between the phone number associated with Navarro and the phone number associated with Lake on the day of the money drop.

Trial began Monday, July 8, 2019. The trial, including the jury's deliberations, lasted 10 days. Thomas's counsel represented that he did not see the email with the call log until after trial ended. Thomas moved for a new trial after the jury returned its verdict, arguing that the call log constituted newly discovered evidence that warranted a new trial and that the Government withheld that evidence in violation of Brady v.

5

Maryland, 373 U.S. 83 (1963). The court denied the motion, finding that the evidence was not newly discovered and would not have undermined critical inculpatory evidence so as to warrant a new trial.

## D.

The day before the jury returned its verdict, the Virgin Islands Daily News (the "Daily News") published an article entitled "Accused rapist on trial in St. Croix murder-for-hire plot." App. 133. The article named Thomas as the defendant, stated that Thomas had attempted to hire someone to kill the victim and her mother in his pending Superior Court case, and identified the District Court judge. The article also included information about evidence introduced at trial, including quotes from the recorded conversations between Thomas and Navarro. The District Court, Thomas, and Thomas's counsel were unaware of the article at the time it was published.

Thomas moved for a new trial under Rule 33 after the jury returned its verdict, arguing that his right to an impartial jury was violated because the jurors considered the article in convicting him. The District Court denied the motion, finding that Thomas had failed to demonstrate that the jury was exposed to the article or that, even if they were, it prevented the jury from deciding the case impartially.

## E.

At sentencing, the court vacated Thomas's conviction of attempted murder pursuant to 14 V.I.C. § 104 and sentenced Thomas to consecutive sentences of ten years of imprisonment on count 1 and five years of imprisonment on count 3. Thomas appealed.

6

II.[1]

Thomas argues on appeal that (1) the District Court erred in denying his Rule 29 motion for judgment of acquittal because the evidence was insufficient to find him guilty of counts 1, 2, and 3; (2) the District Court erred in denying his Rule 33 motion for a new trial because the jury was not impartial and because newly discovered evidence warranted a new trial; (3) the District Court erred in denying his motion to dismiss for spoilation of evidence based on Charles's removal; and (4) the imposed consecutive sentences violate federal and local sentencing statutes. We consider each argument in turn.

A.

We start by considering Thomas's argument that the District Court erred in denying his Rule 29 motion for judgment of acquittal. On appeal from the denial of a motion for judgment of acquittal, we exercise plenary review and will sustain the verdict if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (emphasis added).

1.

The elements of use of interstate commerce facility in commission of a murder for hire in violation of 18 U.S.C. § 1958(a) are (1) interstate travel or use of the mail or an interstate facility; (2) with the intent that a murder be committed; and (3) that it be committed as consideration for the receipt of or a promise to pay anything of pecuniary

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

value.  United States v. Hernandez, 141 F.3d 1042, 1056 (11th Cir. 1998) (quoting 18

U.S.C. § 1958).  Thomas challenges the second two elements.

There were sufficient facts presented to the jury that could lead a rational trier of

fact to find beyond a reasonable doubt that Thomas intended a murder be committed and

that the murder be committed in exchange for monetary payment.  The Government

presented as evidence the recorded phone conversations between Navarro and Thomas

and text messages in which Thomas named P.E. and her mother as the witnesses against

him in the Superior Court case, reiterated that he wanted the two killed, stated that he

would get the gun, and affirmed that he would find someone else to commit the murder if

Navarro's partner did not do it.  The Government also introduced evidence that Thomas

was willing to pay for the murder, including a $500 down payment, and that Thomas

instructed Beazer to pick up and drop off that down payment on his behalf.  The evidence

viewed in the light most favorable to the Government, therefore, was more than sufficient

for the jury to find Thomas guilty of count 1, and we will sustain the verdict on that

count.

2.

The elements of completed retaliation against a witness in violation of 14 V.I.C.

§ 1510(a)(1) are (1) the use of "force, threat, or intimidation against any person called or

to be called as a witness at any trial, proceeding, inquiry or investigation authorized by

law relating to a felony"; and (2) with the "intent to influence or prevent the testimony"

of that witness or in retaliation for any testimony given.  The elements of attempt are "(1)

an intent to do an act or bring about certain consequences which in law would amount to

8

a crime; and (2) an act in furtherance of that attempt which goes beyond mere preparation." Roberts v. People, 76 V.I. 555, 575 (V.I. 2022). Thomas argues that the evidence was insufficient for any juror to find that he attempted to threaten or use force against any potential witness in the Superior Court case.

Here too, there was sufficient evidence for the jury's guilty verdict. The jury saw text messages in which Thomas identified P.E. and her mother as witnesses against him and heard recordings in which Thomas stated repeatedly that he wanted the two killed. And they heard testimony that Thomas instructed Beazer to make a money drop intended to be the down payment on the murder. The evidence, viewed in the light most favorable to the Government, therefore was more than sufficient for a rational juror to find that Thomas attempted to use force against P.E. and her mother. We will sustain the verdict on count 3.[2]

### B.

We next address Thomas's argument that the District Court erred in denying his Rule 33 motion for a new trial. Rule 33 permits a defendant to seek vacatur of a judgment and the grant of a new trial where "the interest of justice so requires." Fed. R. Crim. P. 33(a). Even when a district court "believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has

---

[2] We need not reach the issue of whether there was sufficient evidence to support the attempted murder conviction because the District Court vacated it.

been convicted." United States v. Silveus, 542 F.3d 993, 1004–05 (3d Cir. 2008) (quotation marks omitted). We review a district court's denial of a Rule 33 motion for abuse of discretion. United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014).[3]

1.

Thomas argues that Officer Lake's call log is newly discovered evidence that warrants a new trial. To succeed on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must demonstrate "that the evidence is newly discovered and that the defendant's failure to discover the information during the trial was not a result of lack of diligence." United States v. Richards, 241 F.3d 335, 349 (3d Cir. 2001); see also United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976) (listing the requirements a defendant must meet before he may be granted a new trial under Rule 33).

The call log here is not newly discovered evidence. "Evidence is not 'newly discovered' if it 'was [actually] known or could have been known by the diligence of the defendant or his counsel.'" United States v. Cimera, 459 F.3d 452, 461 (3d Cir. 2006) (alteration in original). The prosecution sent the call log to the defense on July 6, 2019, and the trial concluded twelve days later on July 18. Counsel acting with reasonable diligence would have checked his email over those twelve days and discovered the call

---

[3] An abuse of discretion occurs when the court's ruling "rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact." United States v. Brown, 595 F.3d 498, 511 (3d Cir. 2010).

10

log.  The District Court therefore did not abuse its discretion in denying the motion for a new trial.[4]

2.

Thomas also argues that he is entitled to a new trial because the jury considered the Daily News article in convicting him and that the Court erred in denying his motion without first holding a hearing.

"[A]llegations of juror exposure to prejudicial extra-record information do not automatically require the court to conduct an evidentiary hearing."  United States v. Console, 13 F.3d 641, 666–67 (3d Cir. 1993).  A district judge is not obliged to investigate claims that jurors were exposed to prejudicial information when "no foundation has been established."  United States v. Vento, 533 F.2d 838, 869–70 (3d Cir. 1976).  "The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality."  United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989).  This requires "'clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred.'"  Id.

Thomas has proffered no evidence that any juror saw the Daily News article or was prejudiced by it.  Thomas assumes as true that the jurors were exposed to the article and considered it in convicting him because of the publication's general popularity and

---

[4] To the extent Thomas also asserts a Brady claim related to Officer Lake's call log, we reject it.  The Government provided Thomas with the call log before trial.  For that reason, "due process [was] not violated and *Brady* [was] not contravened."  United States v. Moreno, 727 F.3d 255, 262 (3d Cir. 2013).

the small size of the Virgin Islands. But Thomas, his counsel, nor the court saw the article when it came out, so it cannot be that the jurors necessarily read and considered the article. Thomas's bare allegations to the contrary fail to establish the foundation necessary to require a hearing or other investigation.[5] The District Court therefore did not err in denying Thomas's motion for a new trial on this ground.[6]

## C.

We next consider Thomas's argument that the court erred in denying his motion to dismiss for spoilation of evidence based on Charles's removal. The Government has a duty to preserve relevant evidence. See Gov't of V.I. v. Testamark, 570 F.2d 1162, 1166 (3d Cir. 1978). The Government's failure to do so violates a defendant's due process rights when the Government "(1) acted in bad faith when it destroyed evidence, which (2)

---

[5] Even if the jurors were exposed to the article, there is no evidence that they were prejudiced by it. The District Court repeatedly instructed the jurors that they were to decide the case solely on the evidence presented during the trial and that they were not to read or consider any news coverage of the case. The jury is presumed to have followed these instructions, see United States v. DiSalvo, 34 F.3d 1204, 1223 (3d Cir. 1994), and Thomas has proffered nothing to suggest that they did not.

[6] Thomas also argues that he is entitled to a new trial because the verdict was contrary to the evidence. We disagree. When a court evaluates a motion for a new trial "it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). To the extent Thomas relies on his insufficiency-of-evidence arguments, they fall flat for the reasons already discussed. See id. (affirming the denial of a motion for a new trial where the defendant's arguments regarding the denial of his new trial motion "rehash[ed]" his insufficiency-of-evidence arguments). This is also not one of the "exceptional cases," Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987), in which the verdict "cries out to be overturned or shocks our conscience," Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).

possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable." United States v. Femia, 9 F.3d 990, 993–94 (1st Cir. 1993). It is the defendant's burden "to show the prosecution's bad faith in ordering or permitting" the destruction of allegedly exculpatory evidence, United States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993), and the absence of bad faith is dispositive, Femia, 9 F.3d at 994.

Thomas here has failed to show that the Government removed Charles in bad faith. A judge recommended in 2014 that DHS remove Charles when Charles pled guilty to immigration violations. DHS then removed Charles in March 2016. Thomas has not provided anything that suggests Charles's removal was anything other than standard DHS procedure; indeed, the prosecution did not even know of Charles's removal until after the fact. The District Court therefore did not err in denying the motion to dismiss.[7]

### D.

We finally consider Thomas's argument that the imposed consecutive sentences violate 18 U.S.C. § 3584(a) and 14 V.I.C. § 104.

### 1.

Section 3584(a) provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt." Thomas argues that the

---

[7] We have considered and reject Thomas's remaining arguments related to Charles's removal, including that this Court should dismiss the case as a sanction for the destruction of evidence or pursuant to its supervisory powers and that Charles's removal constituted a Brady violation.

murder for hire was the "sole objective" of the attempted retaliation against a witness and

he therefore should not have received consecutive sentences. We disagree.

Section 3584(a) addresses a situation in which a defendant is being sentenced for

both an attempt and for a completed offense of the same kind. See United States v.

Baskin, 878 F.3d 1106, 1109–10 (8th Cir. 2018); United States v. Aimufua, 930 F.2d 23,

1991 WL 49630, at *1 (4th Cir. 1991). The "sole objective" of attempted retaliation is

completed retaliation. Because Thomas was sentenced to murder for hire and attempted

retaliation, his consecutive sentences do not violate section 3584(a).[8]

2.

Thomas also argues that his sentence violates 14 V.I.C. § 104. Section

104 provides:

> An act or omission which is made punishable in different ways by different
> provisions of this Code may be punished under any of such provisions, but
> in no case may it be punished under more than one. An acquittal or
> conviction and sentence under any one bars a prosecution for the same act
> or omission under any other.

V.I. Code tit. 14, § 104. "The plain language of section 104 — specifically the

prepositional phrase 'of this Code' — makes clear that it prohibits multiple punishments

for one act under different provisions of the Virgin Islands Code." United States v.

Ayala, 917 F.3d 752, 760 (3d Cir. 2019) (emphasis in original).

---

[8] To the extent Thomas also challenges his consecutive sentences as violating the Double
Jeopardy Clause, he has forfeited that argument by inadequately briefing it. See Barna v.
Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017);
Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 821 n.10 (3d Cir. 2006).

Thomas was not punished for one act under multiple provisions of the Virgin Islands Code. Thomas was indicted and found guilty of two local charges — attempted murder and attempted retaliation of a witness — but the court vacated Thomas's attempted murder conviction and sentenced him under the Code only for attempted retaliation of a witness. His sentences therefore are not multiplicitous under section 104, and we will affirm the consecutive sentences.

III.

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.